UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


JON DUKE DEPRIEST,

                Petitioner,

v.                              Case No. 3:14-cv-756-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                Respondents.

_____

**<u>ORDER</u>**

### I. Status

Petitioner Jon Duke DePriest, an inmate of the Florida penal system, initiated this action on June 25, 2014, by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254. In the Petition, DePriest challenges a 2011 state court (Nassau County, Florida) judgment of conviction for dealing in stolen property. Respondents have submitted a memorandum in opposition to the Petition. <u>See</u> Respondents' Answer in Response to Order to Show Cause and Petition for Habeas Corpus (Response; Doc. 12) with exhibits (Resp. Ex.). On September 25, 2014, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 8), admonishing DePriest regarding his obligations and giving DePriest a time frame in which to submit a reply. DePriest submitted a brief in reply. <u>See</u> Reply to Respondents' Answer (Reply; Doc. 16); Notice of Supplemental Authority (Doc. 19). This case is ripe for review.

## II. Procedural History

On February 8, 2011, the State of Florida, in case number 2010-CF-1004, charged DePriest with burglary of a dwelling (count one) and dealing in stolen property (count two). See Resp. Ex. A at 21-22, Amended Information. DePriest proceeded to trial in March 2011, see Resp. Exs. C, D, Transcripts of the Jury Trial (Tr.), at the conclusion of which, on March 14, 2011, a jury found him guilty of dealing in stolen property (count two), see Resp. Ex. A at 79, Verdict, and not guilty of burglary (count one), see id. at 78, Verdict. On April 7, 2011, the court sentenced DePriest to a term of imprisonment of thirty years. See id. at 184-93, Judgment; Resp. Ex. F, Transcript of the Sentencing Proceeding.

On direct appeal, DePriest, with the benefit of counsel, filed an initial brief, arguing that the trial court erred when it failed to give a special jury instruction (as requested by DePriest) expanding the inference permitted if the defendant is found in possession of recently stolen goods. Resp. Ex. G. The State filed an answer brief, see Resp. Ex. H, and DePriest filed a reply brief, see Resp. Ex. I. On December 19, 2011, the appellate court affirmed DePriest's conviction per curiam, see DePriest v. State, 76 So.3d 294 (Fla. 1st DCA 2011); Resp. Ex. J, and the mandate issued on January 17, 2012, see Resp. Ex. K.

On November 5, 2012, DePriest filed a pro se petition for writ of habeas corpus. In the petition, he asserted that appellate

counsel (Assistant Public Defender David A. Davis) failed to raise the following issues on direct appeal: the trial court erred when it allowed the testimonial hearsay statements of Michelle Dotson (a non-testifying witness) over a defense objection (claim one); fundamental error occurred when the prosecutor made improper opening and closing arguments (claim two); there was insufficient evidence to support the conviction for dealing in stolen property (claim three); and the trial court abused its discretion when it permitted the State to introduce <u>Williams</u>[1] rule evidence and allow the evidence to become a feature of the trial (claim four). Resp. Exs. L, M. The appellate court directed the State to show cause why the petition should not be granted. <u>See</u> Resp. Ex. O. The State responded, <u>see</u> Resp. Exs. P; Q, and Petitioner replied, <u>see</u> Resp. Ex. R. The appellate court denied the petition on the merits on June 28, 2013. <u>See</u> <u>DePriest v. State</u>, 115 So.3d 1110 (Fla. 1st DCA 2013); Resp. Ex. S.

On September 6, 2013, pursuant to the mailbox rule, DePriest filed a pro se motion for post-conviction relief pursuant to

---

[1] Similar fact evidence, also known as <u>Williams</u> rule evidence, is governed by the requirements and limitations of Florida Statutes section 90.404, which permits "evidence of other crimes, wrongs, or acts ... when relevant to prove a material fact in issue," such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fla. Stat. § 90.404(2)(a); <u>see</u> <u>Williams v. State</u>, 110 So.2d 654 (Fla. 1959). The similar fact evidence is inadmissible when it "is relevant solely to prove bad character or propensity." Fla. Stat. § 90.404(2)(a).

Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion). <u>See</u>
Resp. Ex. T. In his request for post-conviction relief, he asserted
that counsel (Harrison W. Poole) was ineffective because he failed
to: adequately investigate and call Nikki Dotson and Michelle
Dotson as witnesses at trial (ground one); locate Michelle Dotson
(ground two); cross-examine Detective Rose about her investigative
report (ground three); ensure that Deputy Kelly was properly
notified of the trial date and available to testify for the defense
(ground four); advise DePriest of the negative impact of not
calling Deputy Kelly to testify (ground five); file a motion to
suppress the recorded telephone conversation between DePriest and
Michelle Dotson and object to the prosecutor's interpretation of
the inaudible portions of the recording (ground six); request a
court order to compel the State to provide the defense with
incriminating statements made by Michelle Dotson (ground seven);
argue a legally sufficient motion for judgment of acquittal (ground
eight); and seek a continuance of the trial based on his assertions
in grounds one, two, three, six and seven (ground nine). <u>See</u> Resp.
Exs. T at 1-26; U. Additionally, he stated that counsel's "strategy
of doing nothing" and cumulative error constitutes ineffectiveness
(ground ten). Resp. Ex. T at 24. The court denied the motion on
September 11, 2013. <u>See</u> <u>id.</u> at 27-55. On appeal, DePriest filed a
pro se brief, <u>see</u> Resp. Ex. V, and the State filed a notice that it
would not file an answer brief, <u>see</u> Resp. Ex. W. On March 24, 2014,

the appellate court affirmed the court's denial of post-conviction relief per curiam, <u>see</u> <u>DePriest v. State</u>, 136 So.3d 1217 (Fla. 1st DCA 2014); Resp. Ex. X, and denied DePriest's motion for rehearing, <u>see</u> Resp. Exs. Y; Z. The mandate issued on May 23, 2014. <u>See</u> Resp. Ex. AA.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, No. 16-8668, 2017 WL 1346407 (June 12, 2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess

[DePriest's] claim[s] without further factual development," <u>Turner</u> <u>v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification</u> <u>Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Wilson v. Warden, Ga. Diagnostic Prison</u>, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), <u>cert</u>. <u>granted</u>, 137 S. Ct. 1203 (2017); <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any

indication or state-law procedural principles to the contrary."
Harrington v. Richter, 562 U.S. 86, 99 (2011) (citation omitted);
see also Johnson v. Williams, 568 U.S. 289, --, 133 S. Ct. 1088,
1096 (2013).[2] Thus, the state court need not issue an opinion
explaining its rationale in order for the state court's decision to
qualify as an adjudication on the merits. See Richter, 562 U.S. at
100.

If the claim was "adjudicated on the merits" in state court,
§ 2254(d) bars relitigation of the claim unless the state court's
decision (1) "was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States;" or (2) "was based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding." 28 U.S.C. § 2254(d);
Richter, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal
> review for claims of state courts' erroneous
> legal conclusions. As explained by the Supreme
> Court in Williams v. Taylor, 529 U.S. 362, 120
> S. Ct. 1495, 146 L.Ed.2d 389 (2000), §
> 2254(d)(1) consists of two distinct clauses: a
> "contrary to" clause and an "unreasonable
> application" clause. The "contrary to" clause
> allows for relief only "if the state court
> arrives at a conclusion opposite to that

---

[2] The presumption is rebuttable and "may be overcome when
there is reason to think some other explanation for the state
court's decision is more likely." Richter, 562 U.S. at 99-100; see
also Johnson, 133 S. Ct. at 1096-97. However, "the Richter
presumption is a strong one that may be rebutted only in unusual
circumstances . . . ." Johnson, 133 S. Ct. at 1096.

reached by [the Supreme] Court on a question
of law or if the state court decides a case
differently than [the Supreme] Court has on a
set of materially indistinguishable facts."
Id. at 413, 120 S. Ct. at 1523 (plurality
opinion). The "unreasonable application"
clause allows for relief only "if the state
court identifies the correct governing legal
principle from [the Supreme] Court's decisions
but unreasonably applies that principle to the
facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal
review for claims of state courts' erroneous
factual determinations. Section 2254(d)(2)
allows federal courts to grant relief only if
the state court's denial of the petitioner's
claim "was based on an unreasonable
determination of the facts in light of the
evidence presented in the State court
proceeding." 28 U.S.C. § 2254(d)(2). The
Supreme Court has not yet defined §
2254(d)(2)'s "precise relationship" to §
2254(e)(1), which imposes a burden on the
petitioner to rebut the state court's factual
findings "by clear and convincing evidence."
See Burt v. Titlow, 571 U.S. ---, ---, 134 S.
Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord
Brumfield v. Cain, 576 U.S. ---, ---, 135 S.
Ct. 2269, 2282, 192 L.Ed.2d 356 (2015).
Whatever that "precise relationship" may be,
"'a state-court factual determination is not
unreasonable merely because the federal habeas
court would have reached a different
conclusion in the first instance.'"[3] Titlow,
571 U.S. at ---, 134 S. Ct. at 15 (quoting
Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct.
841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert.

denied, No. 16-8733, 2017 WL 1386004 (U.S. June 26, 2017); see also

---

[3] The Eleventh Circuit has described the interaction between
§ 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y
Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

<u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1259 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made"); <u>Landers v. Warden, Att'y Gen. of Ala.</u>, 776 F.3d 1288, 1295 (11th Cir. 2015) (regarding § 2254(d)(2)).

Where the state court's adjudication on the merits is "'unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show[] there was no reasonable basis for the state court to deny relief.'" <u>Wilson</u>, 834 F.3d at 1235 (quoting <u>Richter</u>, 562 U.S. at 98). Thus, "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." <u>Richter</u>, 562 U.S. at 102; <u>see also</u> <u>Wilson</u>, 834 F.3d at 1235. To determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state trial court's previous opinion as one example of a reasonable application of law or determination of fact. <u>Wilson</u>, 834 F.3d at 1239; <u>see also</u> <u>Butts v. GDCP Warden</u>, 850 F.3d 1201, 1204 (11th Cir.

2017).[4] However, in <u>Wilson</u>, the en banc Eleventh Circuit stated that the federal habeas court is not limited to assessing the reasoning of the lower court. 834 F.3d at 1239. As such,

> even when the opinion of a lower state court contains flawed reasoning, [AEDPA] requires that [the federal court] give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt," <u>Renico</u>,[5] 559 U.S. at 773, 130 S.Ct. 1855 (quoting <u>Visciotti</u>,[6] 537 U.S. at 24, 123 S.Ct. 357), and presume that it "follow[ed] the law," <u>Donald</u>,[7] 135 S.Ct. at 1376 (quoting <u>Visciotti</u>, 537 U.S. at 24, 123 S.Ct. 357).

<u>Id.</u> at 1238.

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). "If this standard is difficult to meet, that is because it was meant to be." <u>Richter</u>,

---

[4] Although the United States Supreme Court has granted Wilson's petition for certiorari, the "en banc decision in <u>Wilson</u> remains the law of the [Eleventh Circuit] unless and until the Supreme Court overrules it." <u>Butts</u>, 850 F.3d at 1205 n.2.

[5] <u>Renico v. Lett</u>, 559 U.S. 766 (2010).

[6] <u>Woodford v. Visciotti</u>, 537 U.S. 19 (2002).

[7] <u>Woods v. Donald</u>, 135 U.S. 1372 (2015).

562 U.S. at 102. Thus, to the extent that DePriest's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052.

> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." <u>Id.</u>, at 687, 104
> S.Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's
> representation is a most deferential one."
> <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788. But
> "[e]stablishing that a state court's
> application of <u>Strickland</u> was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by <u>Strickland</u> and § 2254(d)
> are both highly deferential, and when the two
> apply in tandem, review is doubly so." <u>Id.</u>
> (citations and quotation marks omitted). "The
> question is not whether a federal court
> believes the state court's determination under
> the <u>Strickland</u> standard was incorrect but
> whether that determination was unreasonable -
> a substantially higher threshold." <u>Knowles v.</u>

12

> *Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411,
> 1420, 173 L.Ed.2d 251 (2009) (quotation marks
> omitted). If there is "any reasonable argument
> that counsel satisfied *Strickland*'s
> deferential standard," then a federal
> court may not disturb a state-court decision denying
> the claim. *Richter*, – U.S. at –, 131 S.Ct. at
> 788.

*Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014), cert.

denied, 135 S.Ct. 2126 (2015); *Knowles v. Mirzayance*, 556 U.S. 111,

123 (2009). "In addition to the deference to counsel's performance

mandated by *Strickland*, the AEDPA adds another layer of

deference--this one to a state court's decision--when we are

considering whether to grant federal habeas relief from a state

court's decision." *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th

Cir. 2004). As such, "[s]urmounting *Strickland*'s high bar is never

an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

## VII. Ineffective Assistance of Appellate Counsel

The two-part *Strickland* standard also governs a claim of

ineffective assistance of appellate counsel. *Overstreet v. Warden*,

811 F.3d 1283, 1287 (11th Cir. 2016). The Eleventh Circuit has

stated:

> To prevail on a claim of ineffective
> assistance of appellate counsel, a habeas
> petitioner must establish that his counsel's
> performance was deficient and that the
> deficient performance prejudiced his defense.
> See *Strickland v. Washington*, 466 U.S. 668,
> 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674
> (1984); *Brooks v. Comm'r, Ala. Dep't of Corr.*,
> 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims
> of ineffective assistance of appellate counsel
> are governed by the same standards applied to

trial counsel under <u>Strickland</u>.") (quotation marks omitted). Under the deficient performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688, 104 S.Ct. at 2064. "The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Harrington</u>, 562 U.S. at 105, 131 S.Ct. at 788 (quotation marks and citations omitted); <u>see also</u> <u>Gissendaner v. Seaboldt</u>, 735 F.3d 1311, 1323 (11th Cir. 2013) ("This double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.") (quotation marks and alteration omitted). "If this standard is difficult to meet, that is because it was meant to be." <u>Harrington</u>, 562 U.S. at 102, 131 S.Ct. at 786.

<u>Rambaran v. Sec'y, Dep't of Corr.</u>, 821 F.3d 1325, 1331 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.Ct. 505 (2016).

When considering deficient performance by appellate counsel,

a court must presume counsel's performance was "within the wide range of reasonable professional assistance." <u>Id.</u>[8] at 689, 104 S. Ct. 2052. Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. <u>See</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Smith v. Robbins</u>, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (quoting <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1986)); <u>see also</u> <u>Burger v. Kemp</u>,

---

[8] <u>Strickland</u>, 466 U.S. at 689.

> 483 U.S. 776, 784, 107 S. Ct. 3114, 97 L.Ed.2d
> 638 (1987) (finding no ineffective assistance
> of counsel when the failure to raise a
> particular issue had "a sound strategic
> basis").

Overstreet, 811 F.3d at 1287; see also Owen v. Sec'y, Dep't of

Corr., 568 F.3d 894, 915 (11th Cir. 2009) (stating "any

deficiencies of counsel in failing to raise or adequately pursue

[meritless issues on appeal] cannot constitute ineffective

assistance of counsel").

To satisfy the prejudice prong, a petitioner must show a

reasonable probability that "but for the deficient performance, the

outcome of the appeal would have been different." Black v. United

States, 373 F.3d 1140, 1142 (11th Cir. 2004) (citations omitted);

see Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009)

("In order to establish prejudice, we must first review the merits

of the omitted claim. Counsel's performance will be deemed

prejudicial if we find that 'the neglected claim would have a

reasonable probability of success on appeal.'") (citations

omitted).

## VIII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, DePriest asserts that his appellate counsel was

ineffective because he failed to raise the following issue on

direct appeal: the trial court erred when it allowed the

testimonial hearsay statements of Michelle Dotson (a non-testifying

witness), over a defense objection, in violation of <u>Crawford v. Washington</u>, 541 U.S. 36 (2004),[9] and <u>Davis v. Washington</u>, 547 U.S. 813 (2006).[10] <u>See</u> Petition at 7-15; Reply at 2-7. DePriest raised the ineffectiveness claim in his state petition for writ of habeas corpus. <u>See</u> Resp. Ex. L at 7-15. The State responded and argued as follows:

> Under ground one, Petitioner alleges that the trial court committed error by allowing introduction of testimonial hearsay statements of Michelle Dotson (a non-testifying witness) over defense objection. The State disagrees.
>
> During the investigation into the home burglaries and dealing in stolen property to which the Petitioner was charged, a known associate of Petitioner participated in a controlled recorded telephone conversation with the Petitioner. During the controlled call, the associate discusses the stolen property that the Petitioner took from the home burglaries. The Petitioner given the opportunity to deny knowledge of the substance of the conversation instead made incriminating admissions to the associate.
>
> At trial, the State admitted the evidence through the law enforcement officer who was present during the telephone call and who

---

[9] In <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause prohibits the introduction of "[t]estimonial statements of witnesses absent from trial" unless "the declarant is unavailable, and ... the defendant has had a prior opportunity to cross-examine" the witness. <u>Id.</u> at 59. The admission of an absent witness's nontestimonial statements, on the other hand, does not run afoul of the Confrontation Clause. <u>Id.</u> at 68.

[10] In <u>Davis</u>, the Supreme Court elaborated on the differences between nontestimonial and testimonial statements to the police. <u>See</u> <u>Davis</u>, 547 U.S. at 822.

could hear both the associate's and the Petitioner's side of the conversation. The officer was able to identify the Petitioner's voice on the telephone call because he was familiar with the Petitioner. Defense counsel objected to the admission of the recorded call on the grounds that because the associate was not testifying it violated the Petitioner's right to confrontation.

The Florida Supreme Court in <u>Globe v. State</u>, 877 So.2d 663 (Fla. 2004), addressed the issue whether adoptive admissions violate the right to confrontation. In <u>Globe</u>, the State introduced a confession by a non-testifying codefendant. Globe was present during the codefendant's statement and had a chance to contradict the statements. Instead of denying or contradicting the statements, Globe verbally affirmed what the codefendant stated and added details. The Court held that admissions by acquiescence or silence do not implicate the Confrontation Clause and are admissible. <u>Globe</u> at 672. Based on <u>Globe</u>, Petitioner's statements to his associate do not violate the Confrontation Clause as they were adoptive admissions.

Petitioner's argument under ground one fails because he did not prove that appellate counsel's performance deviated from the norm under the first prong of the <u>Strickland</u> analysis. As there was no error below, appellate counsel cannot be deemed ineffective for failing to raise this claim. The failure of appellate counsel to brief an issue which is without merit is not a deficient performance which falls measurably outside the range of professionally acceptable performance. Thus, Petitioner's judgment and sentence should be affirmed.

Resp. Ex. P at 5-7. Petitioner replied, <u>see</u> Resp. Ex. R at 1-4, and the appellate court ultimately denied the petition on the merits, <u>see</u> Resp. Ex. S.

17

Thus, as there is a qualifying state court decision, the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, DePriest is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, DePriest's ineffectiveness claim is without merit. DePriest has failed to establish that appellate counsel's failure to raise the issue on direct appeal was deficient performance. He asserts that Dotson's statements on the tape-recorded controlled telephone call were testimonial because law enforcement officers provided her with questions to pose to DePriest as a means "to inculpate [him] ... in a criminal episode." Petition at 13. At trial, Detective Charity Rose testified about Dotson's involvement in a Nassau County Sheriff's Office burglary investigation. See Tr. at 145-52. According to Detective Rose, she and Detective Patterson met Dotson at her residence where they recorded a conversation between Dotson and DePriest, see id. at 152; Rose heard both sides of the live telephone conversation, and

recognized DePriest's voice, see id. at 152-53, 277-78, 285, 287.
Defense counsel objected to the State seeking to introduce the
recording on the ground that the defense would not have an
opportunity to cross-examine Dotson. See id. at 153. The court
heard argument from the State and defense, see id. at 152-61,
sustained the defense's objection,[11] see id. at 161-62, stated the
court's ruling "goes only as to [Dotson's] portion of the
conversation, see id. at 162, and affirmed that the court would
revisit the issue of admitting the recording if the State could
locate Dotson, see id. The State provided additional argument,[12] see
id. at 162-64, to which the defense responded, see id. at 164-65.
After additional discussion with the parties, see id. at 165-68,
the court ultimately admitted a redacted[13] audible version of the
recording based on Hernandez v. State, 979 So.2d 1013, 1016-17
(Fla. 3rd DCA 2008), and the state appellate court's citations to
Globe v. State, 877 So.2d 663 (Fla. 2004), and Crawford. See Tr. at
168, 278. The jury heard the recording, see id. at 279-84, after
which the trial judge commented: "I could not understand a word of

---

[11] The trial judge stated: "Hernandez seems to support my
ruling." Tr. at 162 (emphasis added); State v. Hernandez, 875 So.2d
1271 (Fla. 3rd DCA 2004).

[12] See Globe v. State, 877 So.2d 663, 673 (Fla. 2004) (stating
that the admission of the codefendant's statements as adoptive
admissions pursuant to section 90.803(18)(b) did not violate the
Confrontation Clause); Hernandez v. State, 979 So.2d 1013, 1016-17
(Fla. 3rd DCA 2008).

[13] The State agreed to redact portions of the recording where
there were "no explicit admissions." Tr. at 167.

that. Put that on the record," id. at 285.[14] The trial court did not abuse its discretion when it admitted a redacted version of the recording.

Given the record, DePriest has not shown a reasonable probability exists that the claim would have been meritorious on direct appeal, if counsel had raised the claim in the manner suggested by DePriest. DePriest's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, DePriest is not entitled to federal habeas relief on ground one.

### B. Ground Two

As ground two, DePriest asserts that his appellate counsel was ineffective because he failed to raise the following issue on direct appeal: fundamental error occurred when the prosecutor made improper comments during opening and closing statements. See Petition at 16-23; Reply at 7-12. DePriest raised the ineffectiveness claim in his state petition for writ of habeas corpus. See Resp. Ex. L at 15-21. The State opposed the petition as to this claim and argued as follows:

---

[14] The official court reporter inserted a note in the trial transcript, stating: "The Judge told me not to worry about taking this audio because it was totally inaudible, but I told him that we have to take what we can for appeal purposes, which I was not able to understand one complete sentence or to even be able to distinguish between who was speaking, the male or the female." Tr. at 278-79.

Petitioner alleges, in ground two, that fundamental error occurred when the prosecutor made improper opening and closing arguments. The State disagrees. Petitioner specifically argued four alleged ways the prosecutor engaged in improper arguments.

First, Petitioner argues [sic] that the prosecutor "in opening, closing, and rebuttal" argued about "Michelle Dotson receiving a 'Mickey Mouse piece of memorabilia from this defendant' which Ms. Dotson turned over to Detective Rose" is completely unsupported by the evidence. (petition at 17). However, the jury was instructed prior to opening statements that what the attorneys say is not evidence it is simply what they believe will be the evidence adduced at trial. (Ex. C, p. 70). Although the prosecutor did make that comment in opening statements,[15] the prosecutor did not make that statement during closing or rebuttal arguments. During trial there was testimony from Detective Rose that she collected a piece of Mickey Mouse memorabilia from Ms. Dotson. (Ex. C, p. 170). The victim testified that the pin had been stolen during the burglary. (Ex. C, p. 96). During closing argument the prosecutor stated these facts, that the detective recovered a Mickey Mouse pin from Ms. Dotson which had been stolen from the victim. (Ex. C, p. 332-333). Further, there was no objection during opening statements to the comment and it does not rise to the level of fundamental error. Appellate counsel could have reasonably decided that the one comment during opening statements was not sufficient to rise to the level of fundamental error. Thus, as it was arguable whether error occurred or not, appellate counsel is not ineffective as courts "have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a

---

[15] See Tr. at 79 (prosecutor's comment that "Michelle Dotson provided "a little Mickey Mouse piece of memorabilia that she received from this defendant").

few key issues." <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983).

Second, Petitioner argues that the prosecutor misstated what was said during the controlled call.[16] (petition at 18). Although the trial court and the court reporter noted that it was difficult to understand the recording (Ex. C, p. 278-279, 285), however, the detective who was present during the recording testified that it was easier to hear the conversation when the volume was not turned up so high. (Ex. C, p. 286). However, as noted by the prosecutor during closing, the jurors had the CD of the conversation in the jur[y] room during deliberations and the prosecutor argued that the jurors should listen to the recording again. (Ex. C, p. 331). Thus, it cannot be presumed that what the prosecutor stated was the contents of the conversation was not actually the contents of the conversation. Just because the court reporter said that portions were inaudible in open court doesn't mean that during deliberations the jurors [...] replayed [sic] the CD and were able to understand every word. As what was said during the recorded conversation is questionable, it was arguable whether error occurred or not, appellate counsel is not ineffective as courts "have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983).

Third, Petitioner argues that the prosecutor's comments violated the court's order granting the defendant's Motion in Limine regarding giving a "detailed sequence of events of the investigation." (petition at 18-19). The State points out that the trial court's order actually was in regards to an anonymous tip through crime stoppers not Ms.

---

[16] <u>See</u> Tr. at 77-79 (prosecutor's comments relating to the controlled telephone call between DePriest and Dotson).

Dotson's participation.[17] (Ex. B, p. 6-8). The
prosecutor did not detail the sequence of
events with regard to the anonymous tipsters
and thus, there is no error. Petitioner's
argument under this argument fails because he
did not prove that appellate counsel's
performance deviated from the norm under the
first prong of the _Strickland_ analysis. As
there was no error below, appellate counsel
cannot be deemed ineffective for failing to
raise this claim. The failure of appellate
counsel to brief an issue which is without
merit is not a deficient performance which
falls measurably outside the range of
professionally acceptable performance.

Fourth, Petitioner argues that the
opening statement by the prosecutor, "if the
Mickey Mouse pin were the only evidence that
the State had, that would be sufficient to
show this defendant's guilt of delivering that
piece of property that he knew was stolen to
Michelle Dotson,"[18] failed to remain neutral
but rather obscured the jury's view with
personal opinion, emotion, and non-record
evidence. (petition at 20). "[A] defendant is
entitled to a fair trial, but not a perfect
one, for there are no perfect trials." _Brown
v. United States_, 411 U.S. 223, 231-232
(1973); _State v. Anderson_, 537 So.2d 1373,
1375 (Fla. 1989). Here, the prosecutor was
merely drawing a conclusion, although it could
be argued that it was improper for opening
remarks, it was not objected to and thus,
would have to rise to the level of fundamental
error, or in other words, vitiate the entire
trial in order to be reversible. Thus, as it
was arguable whether error occurred or not,
appellate counsel is not ineffective as courts
"have emphasized the importance of winnowing
out weaker arguments on appeal and focusing on
one central issue if possible, or at most on a

---

[17] _See_ Resp. Ex. B at 8.

[18] _See_ Tr. at 79.

> few key issues." <u>Jones v. Barnes</u>, 463 U.S.
> 745, 751-52 (1983).

Resp. Ex. P at 7-10. Petitioner replied, <u>see</u> Resp. Ex. R at 4-11, and the appellate court ultimately denied the petition on the merits, <u>see</u> Resp. Ex. S.

There is a qualifying state court decision. Therefore, the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, DePriest is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, DePriest's ineffectiveness claim is without merit. DePriest has failed to establish that appellate counsel's failure to raise the issue on direct appeal was deficient performance. Attorneys are permitted wide latitude in their opening and closing arguments, and the record reflects that the trial judge instructed the jury that the attorneys were not witnesses in the case, and therefore their statements and arguments were not evidence. <u>See</u> Tr. at 70-71, 318; <u>Hammond v. Hall</u>, 586 F.3d

1289, 1334 (11th Cir. 2009); <u>Brown v. Jones</u>, 255 F.3d 1273, 1280 (11th Cir. 2001) (stating that "jurors are presumed to follow the court's instructions.").

Given the record, DePriest has not shown a reasonable probability exists that the ineffectiveness claim would have been meritorious on direct appeal,[19] if counsel had raised the claim in the manner suggested by DePriest. DePriest's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, DePriest is not entitled to federal habeas relief on ground two.

## C. Ground Three

As ground three, DePriest asserts that his appellate counsel was ineffective because he failed to argue on direct appeal that there was insufficient evidence to support the conviction for dealing in stolen property in the state of Florida. <u>See</u> Petition at 23-26; Reply at 12-14. DePriest raised the ineffectiveness claim in his state petition for writ of habeas corpus. <u>See</u> Resp. Ex. L at 21-25. The State responded and argued as follows:

---

[19] <u>See</u> <u>Braddy v. State</u>, Nos. SC15-404, SC16-481, 2017 WL 2590802, *11-12 (Fla. June 15, 2017); <u>Braddy v. State</u>, 111 So.3d 810, 837 (Fla. 2012) ("As for those comments to which Braddy did not object at trial but now appeals, we apply fundamental error review.") (citation omitted); <u>see</u> <u>Brooks v. State</u>, 762 So.2d 879, 899 (Fla. 2000) (defining fundamental error as that which "reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error") (quoting <u>McDonald v. State</u>, 743 So.2d 501, 505 (Fla. 1999)).

Petitioner alleges, in ground three, that there was insufficient evidence to support the conviction for dealing in stolen property in the State of Florida.

Petitioner was charged with dealing in stolen property in Nassau County[,] Florida. The property that Petitioner was charged with dealing in was stolen from a home located in Nassau County and sold to a pawn shop in the State of Georgia. In order for a defendant to be convicted of dealing in stolen property in Nassau County, the record had to support the jury's conclusion that a defendant dealt in stolen property in Nassau County. State v. Crider, 625 So.2d 957, 959 (Fla. 5th DCA 1993). However, unlike essential elements of a crime, venue need not be proven beyond a reasonable doubt. Crider at 959. It is sufficiently proven if a jury can reasonably infer from the evidence that the offense was committed in the county where the charges were brought. Id.

Here, there was testimony from the home owner that certain jewelry was stolen from her house. (Ex. C, p. 84-85). The victim then testified that she viewed her stolen jewelry at a jewelry store in Georgia which she subsequently had to repurchase from the store. (Ex. C, p. 89-90). The jewelry store owner testified that Petitioner sold the jewelry to him. (Ex. C, p. 134-136). The owner testified that Petitioner was accompanied by another man during the transaction. (Ex. C, p. 135). The other man, a codefendant of Petitioner, testified that the Petitioner stole the jewelry in question and he drove the Petitioner to Georgia with the specific intent to sell the jewelry to gain money to buy drugs. (Ex. C, p. 253-254). Based on Crider, there was sufficient evidence to prove venue.

Petitioner's argument under ground three fails because he did not prove that appellate counsel's performance deviated from the norm under the first prong of the Strickland analysis. As there was no error below,

> appellate counsel cannot be deemed ineffective
> for failing to raise this claim. The failure
> of appellate counsel to brief an issue which
> is without merit is not a deficient
> performance which falls measurably outside the
> range of professionally acceptable
> performance. Thus, Petitioner's judgment and
> sentence should be affirmed.

Resp. Ex. P at 10-12. Petitioner replied, <u>see</u> Resp. Ex. R at 11-14, and the appellate court ultimately denied the petition on the merits, <u>see</u> Resp. Ex. S.

As there is a qualifying state court decision, the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, DePriest is not entitled to relief on the basis of this claim.

Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference, DePriest's ineffectiveness claim is without merit. DePriest has failed to establish that appellate counsel's failure to raise the issue on direct appeal was deficient performance. At trial, Timothy Buck Higginbotham testified that DePriest delivered the stolen property to him. <u>See</u> Tr. at 253-54, 256-57, 258, 259-60. Defense counsel

moved for a judgment of acquittal and argued that the State had not

presented a prima facie case for dealing in stolen property. See

id. at 288-89. After hearing argument, the court denied the motion

for judgment of acquittal.[20] See id. at 290-91. At the close of the

evidence, the court instructed the jury as follows:

> As to count two, to prove the crime of
> dealing in stolen property, the State must
> prove the following two elements beyond a
> reasonable doubt:
>
> 1. Jon Duke DePriest trafficked in
> property.
>
> 2. Jon Duke DePriest knew or should have
> known that the property was stolen.
>
> . . . .
>
> It must be proved only to a reasonable
> certainty that the alleged crime was committed
> in Nassau County, Florida.

Id. at 351-52, 356. Thus, given Higginbotham's testimony that

DePriest delivered the stolen property to Higginbotham's Nassau

County home, see id. at 106, 250, there was evidence that DePriest

had committed the crime of dealing in stolen property in Nassau

County.

Given the record, DePriest has not shown a reasonable

probability exists that the claim would have been meritorious on

direct appeal, if counsel had raised the claim in the manner

---

[20] Upon the court's inquiry, defense counsel affirmed that
Higginbotham had testified that DePriest brought the stolen goods
to Higginbotham's house. See Tr. at 291.

suggested by DePriest. DePriest's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, DePriest is not entitled to federal habeas relief on ground three.

### D. Ground Four

As ground four, DePriest asserts that trial counsel was ineffective because he failed to: (a) adequately investigate and call Nikki Dotson and Michelle Dotson as witnesses at trial; (b) locate Michelle Dotson; (c) cross-examine Detective Rose about her investigative report; (d) ensure that Deputy Kelly was properly notified of the trial date and available to testify at trial; (e) advise DePriest of the negative impact of not calling Deputy Kelly to testify; (f) file a motion to suppress the recorded conversation between DePriest and Michelle Dotson and object to the prosecutor's interpretation of the inaudible portions of the recording; (g) request a court order to compel the State to provide the defense with incriminating statements made by Michelle Dotson; (h) argue a legally sufficient motion for judgment of acquittal; and (i) seek a continuance of the trial. Petition at 27-45; Reply at 14-16. Petitioner raised these ineffectiveness claims in his Rule 3.850 motion in state court. <u>See</u> Resp. Ex. T at 1-26. The court ultimately denied the post-conviction motion with respect to these claims, stating in pertinent part:

> <u>As to Point I</u>: Defendant argues his counsel
> was ineffective for failing to call Nikki

Dotson and Michelle Dotson as witnesses at his trial. Defendant was asked twice at the end of the trial if there were any additional witnesses or evidence he wished presented and he answered in the negative. See pages 293 and 294 and 306 and 307 of the trial transcript from March 14, 2011, copies of which are attached.[21]

<u>As to Point II</u>: Defendant argues his counsel was ineffective for failing to locate Michelle Dotson. See response to Point I.

<u>As to Point III</u>: Defendant argues his counsel was ineffective for failing to ask Detective Rose about her investigative report which stated that Michelle Dotson received the Mickey Mouse pin "from her daughter Nikki." Defendant fails to disclose that in the report Detective Rose actually reports that the Mickey Mouse pin was "given to [Michelle Dotson's] daughter, <u>by Jon DePriest</u>." (Emphasis added). Please see Exhibit "A" of defendant's Appendix of Exhibits.[22]

<u>As to Points IV and V</u>: Defendant argues his counsel was ineffective for failing to have Officer Kelly present at trial to testify. Defendant expressly waived his right to appeal this matter, for when discussing Officer Kelly's absence and his counsel's suggestion of "possibly coming back tomorrow" to have Officer Kelly present, the defendant announced to the Court: "Well, Your Honor, sir, there was one [Officer Kelly], but he's not here, so we're just going to go without him, sir." Please see pages 306 and 307 of the trial transcript from March 14, 2011, copies of which are attached hereto.

<u>As to Point VI</u>: Defendant argues his counsel was ineffective for failing to file a motion

---

[21] <u>See</u> <u>also</u> Tr. at 292.

[22] <u>See</u> Resp. Ex. U, Exhibit A, Nassau County Sheriff's Office Investigative Summary.

to suppress a taped telephone conversation between the defendant and Michelle Dotson. Defense counsel did object at trial to introduction of the taped telephone conversation but his objection was overruled after lengthy argument. See pages 153-168 from the trial transcript of March 14, 2011, copies of which are attached hereto. The issue of the admission of the tape was also presented on appeal.[23] See paragraph 3 of defendant's Statement of Judicial Acts to be Reviewed, a copy of which is attached hereto.

As to Point VII: Defendant argues his counsel was ineffective for failing to obtain a copy of the taped telephone conversation prior to trial. Defense counsel's arguments referred to in Point VI (pages 153-168 of the trial transcript copies of which are attached hereto) clearly refutes this. His argument at trial shows a clear understanding of the contents of the tape and his legal citations evidence extensive research prior to the trial.

As to Point VIII: Defendant argues his counsel was ineffective for failing to present "a legally sufficient Motion for Judgment of Acquittal." Defense counsel made a well-reasoned motion for judgment of acquittal. Please see pages 288-291 from the trial transcript from March 14, 2011, copies of which are attached hereto.

As to Point IX: Defendant argues his counsel was ineffective for failing to seek a continuance of the trial based on his arguments contained in Points I, II, III, VI and VII. The Court has found these points to

---

[23] Notably, trial counsel listed the issue relating to admission of the recording as one of the "judicial acts to be reviewed upon the appeal." See Resp. Ex. A at 197-98, Statement of Judicial Acts To Be Reviewed. However, DePriest, with the benefit of appellate counsel, failed to argue the issue on appeal. See Resp. Exs. G; I.

> be insufficient and this ground is therefore
> without legal support.

See Resp. Ex. T at 27-29. On DePriest's appeal, the appellate court affirmed the trial court's denial per curiam, see DePriest, 136 So.3d 1217; Resp. Ex. X, and denied DePriest's motion for rehearing, see Resp. Exs. Y; Z.

To the extent that the state appellate court affirmed the trial court's denial on the merits, the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, DePriest is not entitled to relief on the basis of these ineffectiveness claims.

Moreover, even assuming the state appellate court's adjudication of these claims is not entitled to deference, DePriest's ineffectiveness claims are still without merit. In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the

wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005). Thus, DePriest must establish that no competent attorney would have taken the action that counsel, here, chose.

Moreover, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. <u>Waters v. Thomas</u>, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. <u>Ward</u>, 592 F.3d at 1164 (quotations and citation omitted); <u>Dingle v. Sec'y for Dep't of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

On this record, DePriest has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. As the Eleventh Circuit has recognized, "[t]here is much wisdom for trial lawyers in the adage

about leaving well enough alone." <u>Waters</u>, 46 F.3d at 1512. Counsel's decision as to "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [the court] will seldom, if ever, second guess." <u>Id.</u>; <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 n.14 (11th Cir. 2000) (describing the decision to call some witnesses and not others as "the epitome of a strategic decision" (quotation marks and citation omitted)). Moreover, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." <u>United States v. Ashimi</u>, 932 F.2d 643, 650 (7th Cir. 1991).

Even assuming arguendo deficient performance by defense counsel, DePriest has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had investigated and prepared the case differently and more thoroughly; called Deputy Kelly, Michelle Dotson, and/or Nikki Dotson to testify at trial; and filed additional pretrial motions and argued at trial in the manner suggested by DePriest. His ineffectiveness claims are without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, DePriest is not entitled to federal habeas relief on ground four.

## IX. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If DePriest seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, DePriest "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon

35

consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If DePriest appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of July, 2017.

MARCIA MORALES HOWARD
United States District Judge

sc 6/30
c:
Jon Duke DePriest
Counsel of Record